**No. 25-1836**

# In the United States Court of Appeals for the Seventh Circuit

WILLIAM S. FILLYAW,

*Defendant-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

*On Appeal from the United States District Court*
*for the Northern District of Illinois, Eastern Division*
*Honorable Matthew F. Kennelly, Judge Presiding*
*District Court No. 23-CR-650*

**BRIEF OF DEFENDANT-APPELLANT**

Jed Stone
Counsel for Appellant
Stone & Associates, Ltd.
325 Washington St., Suite 400
847-336-7888
jstone@jedstone.com
ARDC No. 2745127

## DISCLOSURE STATEMENT UNDER CIRCUIT RULE 26.1

Jed Stone of Stone & Associates, Ltd., is the attorney for William Fillyaw. Counsel Jed Stone is the only attorney to have appeared on behalf of Mr. Fillyaw in this case before this Court and in the District Court below, pursuant to Circuit Rule 3(d).

/s/ Jed Stone
Jed Stone
Counsel for Defendant-Appellant

**TABLE OF CONTENTS**

Disclosure statement Under Circuit Rule 26.1 .......... i

Table of Contents .......... ii

Table of Authorities .......... iv

Statement for Oral Argument Pursuant to Cir. R. 34(f) .......... 1

Jurisdictional Statement .......... 1

Statement of Issues .......... 2

Statement of the Case .......... 3

1. Procedural History .......... 3

2. General Background .......... 4

3. Mr. Fillyaw's Arrest .......... 4

4. Mr. Fillyaw's Case in the Eastern District of Wisconsin .......... 6

   a. Motion to Suppress the Search of Fillyaw's Backpack .......... 6

   b. Resolution of Eastern District of Wisconsin Case .......... 6

5. Mr. Fillyaw's Case in the Northern District of Illinois .......... 6

   a. Motion to Suppress Hearing .......... 7

   b. Motion to Suppress Ruling .......... 9

   c. Motion to Reconsider the Denial of Mr. Fillyaw's Suppression Motion .......... 10

Summary of the Argument .......... 10

Argument .......... 11

I. The lower court erred in finding the impoundment and inventory search were reasonable under the Fourth Amendment because there was no justification to seize Mr. Fillyaw's

backpack, and the search substantially deviated from policy and was in bad faith. .......... 14

A. An impoundment is a seizure under the Fourth Amendment that must be done pursuant to a standardized policy. .......... 14

B. Under the *Sanders'* factors, the impoundment was pretextual and therefore unreasonable and violated Mr. Fillyaw's Fourth Amendment. .......... 17

C. The "inventory search" that followed the preceding impoundment was unreasonable because it substantially deviated from policy and was done in bad faith. .......... 21

1. The inventory search substantially deviated from FBI policy on inventory searches. .......... 22

a. Overall deviation and the failure to strictly comply with FBI protocol. .......... 23

b. Agents never obtained the backpack through lawful means. .......... 24

c. The failure to file the proper forms in an inventory search. .......... 25

d. The memorialized facts do not support an inventory search. .......... 25

e. Ploch deviated from FBI policy when he conducted the search alone. .......... 26

f. Special Agent Dettmering testified he had probable cause to get a warrant for the bag during the motion to suppress hearing. .......... 27

2. Ploch's "inventory search" was done in bad faith, making the search unreasonable under the Fourth Amendment. .......... 29

II. The lower court erred in denying Mr. Fillyaw's motion to reconsider where it was shown to the court that it misapplied the law. .......... 33

III. Under the injustice and public interest exceptions for forfeiture, this Court should consider whether the search of Mr. Fillyaw's

backpack flows from an unlawful dragnet search of a "license plate reader" database. .......... 34

Conclusion .......... 36

Certificate of Compliance .......... 38

## TABLE OF AUTHORITIES

### Cases

*Arizona v. Gant*, 556 U.S. 332 (2009) .......... 32

*Cady v. Dombrowski*, 413 U.S. 433 (1973) .......... 11, 15

*Caniglia v. Strom*, 593 U.S. 194 (2021) .......... 12

*Carnes v. HMO La.*, 114 F.4th 927 (7th Cir. 2024) .......... 13

*Carpenter v. United States*, 585 U.S. 296, 310 (2018) .......... 35

*City of Chi. v. Matchmaker Real Estate Sales, Inc.*, 982 F.2d 1086 (7th Cir. 1992) .. 34

*Colorado v. Bertine*, 479 U.S. 367 (1987) .......... 16, 18, 21, 26

*Cruz-Moyaho v. Holder*, 703 F.3d 991 (7th Cir. 2012) .......... 33

*Illinois v. Lafeyette*, 462 U.S. 640 (1983) .......... 21

*Payton v. New York*, 445 U.S. 573 (1980) .......... 11

*South Dakota v. Opperman*, 428 U.S. 364 (1976) .......... 15

*United States v. Braxton*, 61 F.4th 830 (10th Cir. 2023) .......... 17, 18, 19, 20

*United States v. Cartwright*, 630 F.3d 610 (7th Cir. 2010) .......... 14, 16, 22

*United States v. Clinton*, 591 F.3d 968 (7th Cir. 2010) .......... 13

*United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996) .......... passim

*United States v. Garay*, 938 F.3d 1108 (9th Cir. 2019) .......... 25

*United States v. Gibson*, 998 F.3d 415 (9th Cir. 2021) .......... 22

*United States v. Jones*, 565 U.S. 400 (2012) .......... 35

*United States v. Knotts*, 460 U.S. 276 (1983) .......... 35

*United States v. Leo*, 792 F.3d 742 (7th Cir. 2015) .......... 11

*United States v. Lomeli*, 76 F.3d 146 (7th Cir. 1996) .......... 24

*United States v. Magdirila*, 962 F.3d 1152 (9th Cir. 2020) .......... 22

*United States v. Parker*, 936 F.2d 950 (7th Cir. 1991) .......... 30

*United States v. Reed*, 319 F. Supp. 3d 1112 (S.D. Ind. 2018) .......... 29

*United States v. Rowland*, 341 F.3d 774 (8th Cir. 2003) .......... 22, 29

*United States v. Sanders*, 796 F.3d 1241 (10th Cir. 2015) .......... 16, 17, 18, 33

*Whren v. United States*, 517 U.S. 801 (1996) .......... 29

**Statutes**

18 U.S.C. § 924(c)(1)(A) .......... 1, 6

18 U.S.C. § 922(g) .......... 1, 6

21 U.S.C. § 841 .......... 1, 6

**Other Authorities**

Andrew Adams, *Hundreds of Police Departments Use Camera Company Accused of Breaking State Law*, Capitol News Illinois (August 27, 2025) .......... 35

Carrie Shepherd, *U.S. Customs and Border Protection Accesses Illinois License Plate Data*, Axios News (August 26, 2025) .......... 36

Cynthia Lee, *Package Bombs, Footlockers, and Laptops: What the Disappearing Container Doctrine Can Tell Us about the Fourth Amendment*, 100 J. Crim. L. & Criminology 1403 (2010) .......... 12, 21

Fed. R. Crim. P. 11(a)(2) .......... 1

Laura K. Donahue, *The Original Fourth Amendment*, 83 U. Chi. L. Rev. 1181 (2016) .......... 11

Liz Nagey, *License Plate Reader Company Under Investigation in Illinois Speaks Out as Suburb Ends Contracts*, ABC 7 Chicago (Aug. 28, 2025) .......................... 35

U.S. Const. amend IV ........................................................................................ 11

## STATEMENT FOR ORAL ARGUMENT PURSUANT TO CIR. R. 34(f)

Mr. Fillyaw through Counsel respectfully requests an oral argument before this Honorable Court. While inventory issues are frequently litigated, the issue of impoundment preceding the inventory search is less common. Mr. Fillyaw seeks an opportunity to argue why the seizure here was an unreasonable impoundment that violated his Fourth Amendment right against unreasonable and warrantless seizures.

## JURISDICTIONAL STATEMENT

William S. Fillyaw was charged in a three-count indictment in the Northern District of Illinois, Eastern Division, with violations of 18 U.S.C. § 922(g), 18 U.S.C. § 924(c)(1)(A), and 21 U.S.C. § 841. ECF No. 1. Mr. Fillyaw filed a motion to suppress the evidence against him as fruits of an unreasonable search under the Fourth Amendment to the United States Constitution. App. 1–35, ECF No. 16. The court below denied the motion following an evidentiary hearing on November 8, 2024. SA. 2, 8–13; ECF No. 41. Reconsideration of the denial of the motion to suppress was sought on December 6, 2024. App. 103-126; ECF No. 42. Again, the court below denied Mr. Fillyaw's motion on December 16, 2024. SA. 3, ECF No. 43. Mr. Fillyaw entered into a plea preserving his right to appeal the denial of his motions for suppression and reconsideration under Fed. R. Crim. P. 11(a)(2), on February 14, 2025. SA. 5; ECF No. 50. Mr. Fillyaw was sentenced to an aggregate sentence of 144 months on May 9, 2025. SA. 5–7; ECF No.'s 59, 67. A timely notice of appeal was filed on May 14, 2025. SA. 14; ECF No. 62. This timely appeal follows.

## STATEMENT OF ISSUES

1. The Fourth Amendment proscribes unreasonable searches and seizures. Inventory searches are reasonable when administered in good faith and pursuant to standardized policy. Preceding any inventory search is the seizure of property— in most cases an "impoundment." Agents impounded Mr. Fillyaw's backpack without justification or consent, and while alternatives to impoundment existed. Without evidence of any standardized policy for impoundment, the Government asserts the seizure was justified. Was the impoundment without any standardized policy or justification reasonable? Further, where the agent who performed the search provided conflicting justifications (i.e., search incident to arrest (investigative) and inventory search (non-investigative), is bad-faith shown?

2. For an inventory search to be reasonable, it must be done according to standardized policy. An inventory search that substantially deviates from standardized policy may be deemed unreasonable under the Fourth Amendment. Did the deviations here violate Mr. Fillyaw's rights?

3. Although not raised below, the search of Mr. Fillyaw's backpack flows from the warrantless search of a commercial license plate reader database. Federal agents in Milwaukee, Wisconsin searched the database which revealed Mr. Fillyaw's van was parked in a private parking lot in Gurnee, Illinois. Based upon this search, agents descended upon the Gurnee, Illinois location. But for the initial search of the database it cannot be said Mr. Fillyaw's backpack would have been discovered on the date of his arrest. Was the initial warrantless database search unconstitutional, and if so, is the search of the backpack fruit of the poisonous tree?

## STATEMENT OF THE CASE

### 1. Procedural History

Mr. Fillyaw was indicted by a grand jury on December 19, 2023. The indictment charged Mr. Fillyaw with possessing a firearm as a prohibited person, possessing a firearm in furtherance of a drug trafficking felony, and possession of a controlled substance with intent to distribute. *See* ECF No. 1. Mr. Fillyaw timely filed a motion to suppress evidence, and two motions to dismiss Counts II and III.[1] *See* App. 1–35; ECF No. 16 (Mr. Fillyaw's motion to suppress).

The first motion to dismiss attacked Counts II and III of the indictment under *New York State Pistol & Rifle Ass'n. v. Bruen*, 597 U.S. 1 (2022). ECF No. 28. The second motion to dismiss sought to dismiss Count III through an as-applied commerce clause challenge. ECF No. 27. Both motions to dismiss were summarily denied. *See* ECF No.'s 27, 28.

The lower court held an evidentiary hearing on the motion to suppress on November 8, 2024. *See* App. 213–328; SA. 2; ECF No. 41. At the conclusion of the hearing the court denied the motion in an oral ruling. *See* App. 107:23–112:4. A timely motion to reconsider was filed on December 6, 2024. App. 103–126. The motion to reconsider was denied on December 16, 2024. SA. 3; App. 329–332.

Mr. Fillyaw pled guilty to Counts I and II of his indictment on February 14, 2025. SA. 4; ECF No. 50. Pursuant to Mr. Fillyaw's plea agreement, he preserved his right to appeal the denial of his motion to suppress and his motion to reconsider.

---

[1] The motions to dismiss Counts II and III are not at issue in this appeal.

ECF No. 51. A sentencing hearing was held on May 9, 2025. SA. 5; ECF No. 29. The lower court imposed consecutive sentences of 84 months on Count I and 60 months on Count II. SA. 6–7; ECF No. 67. Following sentencing, Mr. Fillyaw timely filed his notice of appeal on May 14, 2025. SA. 14; ECF No. 62.

### 2. General Background

William Fillyaw was arrested on October 28, 2022, by the FBI's Milwaukee Safe Streets Task Force in Gurnee, Illinois, pursuant to an arrest warrant out of the Eastern District of Wisconsin. App. 135. The criminal complaint charging Mr. Fillyaw alleged, *inter alia*, he participated in an arson in furtherance of another felony and he was an accessory after the fact to that arson. *See generally, United States v. Fillyaw*, Case No. 2:22-cr-223 (E.D. Wisc.); App. 160. The criminal complaint alleged Mr. Fillyaw's "black conversion van" bearing Wisconsin license plate number ANB9487 was observed on license plate readers near the scene of the arson and around the time of the arson. *See e.g.,* App. 148–49 (¶¶'s 21–23), 165–66.

### 3. Mr. Fillyaw's Arrest

Agents set up surveillance on the Gurnee, Illinois location after searching a "commercial license plate reader database." App. 149. According to an agent's sworn affidavit, a search of the database revealed "[n]umerous [license plate] readers showed [Mr. Fillyaw's black van] in the parking lot at 1600 Wedgewood Drive, Gurnee, Illinois." *Id*. at ¶ 24. This location was a private apartment complex. *See id*.

Over the course of a few days agents surveilled the private complex and observed Mr. Fillyaw coming and going. *Id*. at ¶ 25.

Mr. Fillyaw was arrested on the morning of October 28, 2023, after he was observed driving into the parking lot in a *different*, maroon-colored van bearing Illinois license plate DN21922. App. 150 at ¶ 29. Mr. Fillyaw was observed exiting the maroon-colored van and grabbing a black backpack. App. 128. As Mr. Fillyaw walked away from the maroon van towards the apartment building, FBI agents and task force officers arrested Mr. Fillyaw by swarming him from all directions. *See generally,* App. 338 (BWC_000003). Agents demanded Mr. Fillyaw get on the ground facedown and spread his arms in a "T" formation. *See* App. 339 (BWC_000004 at 2:08–4:50). Mr. Fillyaw complied. *See id.* Agents removed Mr. Fillyaw's backpack and placed it on the ground away from him. App. 20–32; *See also* App. 337 (BWC_000001), 338 (BWC_000003), 339 (BWC_000004). Mr. Fillyaw was handcuffed, placed back on his feet, and was moved toward a government vehicle. *See id.; see also* App. 337 (BWC_000001 at 3:00–9:29)

After Mr. Fillyaw was secured, a task force officer named Brian Ploch ("TFO Ploch" or "Ploch" herein) walked over and retrieved Mr. Fillyaw's backpack. App. 339 (BWC_000004 at 3:19). He carried Mr. Fillyaw's backpack approximately 30 to 40 feet in the opposite direction Mr. Fillyaw was being taken. App. 33. From about 30 to 40 feet away, TFO Ploch opened and searched Mr. Fillyaw's bag. *Id.* Ploch opened the bag, removed a pair of pants and uncovered a bag of suspected cannabis and a firearm. *See* App. 338 (BWC_000003 at 4:23); App. 340 (BWC_000006 at 0:31). Ploch then continued to search the bag and found opaque plastic bags containing packages of fentanyl, cocaine, and U.S. currency. *See id.* at 0:31–9:17.

Ploch's report labelled this search as "incident to arrest." *See* App. 128. Mr. Fillyaw remained uncharged for the drugs.

### 4. Mr. Fillyaw's Case in the Eastern District of Wisconsin

#### a. *Motion to Suppress the Search of Fillyaw's Backpack*

Mr. Fillyaw's attorney in the Eastern District of Wisconsin filed a motion to suppress the gun and drugs at issue in this case. *See* App. 160–207. Although the motion was never argued, the issues were fully briefed by both sides. *Id*. In the Eastern District of Wisconsin case, the Government proffered justifications for the search of Mr. Fillyaw's backpack suggesting the search of the backpack was investigative— the Government argued the reasonableness of the search incident to arrest. *See* App. 182–83. According to the Government, it would not have been unreasonable for law enforcement to believe they would find evidence of the arson in Mr. Fillyaw's backpack. App. 182.

#### b. *Resolution of Eastern District of Wisconsin Case*

Mr. Fillyaw pled guilty to being an accessory after the fact for the transportation of a stolen motor vehicle on November 7, 2023. *See Fillyaw*, 2:22-cr-223 (E.D. Wisc.), ECF No. 57. Mr. Fillyaw was sentenced to three years in the Bureau of Prisons on May 9, 2024. *See id*. at ECF No.'s 71, 75.

### 5. Mr. Fillyaw's Case in the Northern District of Illinois

After Mr. Fillyaw pled guilty in the Eastern District of Wisconsin, he was indicted in the Northern District of Illinois on charges under 18 U.S.C. §§'s 922(g) and 924(c)(1)(A), and 21 U.S.C. § 841. *See* ECF No. 1.

Counsel filed a motion to suppress arguing the search of Mr. Fillyaw's backpack violated the search incident to arrest exception to the warrant requirement. App. 1–35. Counsel argued because the backpack was approximately 40 feet away at the time it was searched and because there was no concern of danger to officers or destruction of evidence, no justification for searching the backpack incident to arrest existed. *See e.g.,* App. 11 at ¶ 24, 33.

The Government contended in response that the search was a lawful inventory search or the evidence would have been inevitably discovered in an inventory search. *See generally,* App. 42–49. In the alternative, the Government contended the search was a lawful incident to arrest. *See id.* at 49-54.

Mr. Fillyaw replied the search was not a lawful inventory search because the backpack was never lawfully seized. App. 90–93. Mr. Fillyaw further argued in reply that the Government's argument in support of a search incident to arrest was based upon caselaw that was abrogated by the Supreme Court. App. 95–99. Because of the dispute of whether the search was incident to arrest or an inventory search, the lower court held an evidentiary hearing on November 8, 2024. ECF. No. 41.

a. *Motion to Suppress Hearing*

The Government called two witnesses at Mr. Fillyaw's evidentiary hearing. The Government's first witness was FBI Agent Jacob Dettmering. *See generally,* App. 215:14–253:2. Agent Dettmering testified to the nature of the arrest operation, the purpose of an inventory search, and to offer that he refused to let Mr. Fillyaw contact anyone prior to being removed from the scene of the arrest. *See id.*

On cross-examination, Dettmering testified he did not have consent or a warrant to seize or search Mr. Fillyaw's backpack. App. 238:9–248:6. Dettmering was examined about FBI inventory search policy. App. 244:2–245:20. Dettmering testified that FBI policy on inventory searches requires an agent to obtain a search warrant when probable cause exists. *Id.* Dettmering further testified he had probable cause, but did not obtain a warrant. App. 242:17–22.

The Government's second witness was TFO Ploch. *See generally,* 253:8–285:5. Ploch testified he searched the bag to make sure no dangerous items existed prior to the bag being transported. *See* App. 264:10–25. Ploch testified he opened the bag within about two minutes of Mr. Fillyaw's arrest, right after he retrieved the bag. App. 276:2–8. Ploch testified that he opened the backpack and removed a pair of jeans, exposing "suspected cannabis and a firearm." App. 262:15–22.

After searching the bag, Ploch called over another TFO with a camera to document the items he found. App. 262:20–263:3. Without testifying about policy or justification, Ploch stated, he was walking with the bag toward Dettmering's vehicle because the bag was going to be transported with Mr. Fillyaw. App. 263:4–19. Ploch testified that he was trying to be efficient so he wrote his report "while [the events are] fresh in [his] head." App. 275:4–12. Finally, Ploch testified he writes his reports so he can remember the events. *Id.* To Ploch, search incident to arrest "mean[t] Mr. Fillyaw was arrested . . . and because he was arrested, [Ploch was] searching [the] backpack." App. 275:21–24.

On cross examination, Ploch testified at the time he did the initial search nobody was with him. *See* App. 282:8–24. Ploch also testified that nowhere in his report did he use the words "inventory search" or "impoundment." App. 282:25–283:9.

The Government redirect examined Ploch; he testified he wrote in his report the search was incident to arrest "to remember what he did that day." App. 288:15–25. Ploch used the term as "a cop" and not as a "lawyer." *Id.*

The Defense called Sabrina Lynch, Mr. Fillyaw's significant other, as a witness at the hearing. App. 285:20–297:17. Ms. Lynch testified that she was present and observed Mr. Fillyaw's arrest. App. 287:24–289:15. Ms. Lynch testified that she would have taken the bag but did not approach agents. App. 291:3–12. Ms. Lynch testified she was scared and nervous because she did not know what was going on. App. 295:14–296:6.

The parties stipulated to entering FBI Agent David Shamsi's report. App. 298:2–25. Like Ploch's report, Shamsi's report labelled the search as incident to arrest. *See id.; see also* App. 135.

b. *Motion to Suppress Ruling*

Although the lower court agreed the search was not a valid search incident to arrest, it found the search was a valid inventory search and the contents of the backpack would have inevitably been discovered in an inventory search. *See* App. 320:5–321:21. The lower court also agreed the backpack was "impounded." App. 321:2–11. According to the Court, Mr. Fillyaw never identified who to give the bag to and Ms. Lynch never asked for the bag or made herself known. App. 322:21–

323:21. Finally, the Court found that if law enforcement left the bag, they would expose themselves to liability. App. 322:14–20. Although the lower court agreed the Government in the Eastern District of Wisconsin argued in favor of finding a search incident to arrest, the court found that no law "tethered" the Government to the initial argument that the search was incident to arrest. App. 320:5–22. Omitted from the court's discussion was good or bad faith. *See* App. 319:23–324:4.

c. *Motion to Reconsider the Denial of Mr. Fillyaw's Suppression Motion*

Mr. Fillyaw filed a motion to reconsider the denial of his motion to suppress on December 6, 2024. App. 103–26. The motion argued, *inter alia*, the lower court erred in finding the agents would be subject to liability if they did not take Mr. Fillyaw's backpack. *See id.* The motion pointed out to the court that the law required a standardized policy for impoundment, and in spite of this requirement, no policy was provided. *See id.* The lower court denied Mr. Fillyaw's motion on December 16, 2024. *See* App. 329–36. The court found that arguing the "judge got it wrong" was not a basis for a motion to reconsider. App. 331:3–8. The lower court's ruling did not address the merits of the legal issues other than to distinguish cars from backpacks. *See* App. 331:9–332:22.

## SUMMARY OF THE ARGUMENT

The seizure of Mr. Fillyaw's backpack was an impoundment that was not conducted pursuant to any proffered policy or other lawful justification. Because the seizure was not pursuant to policy, it was unreasonable and violated the Fourth Amendment. Beyond the seizure of Mr. Fillyaw's backpack, the inventory search

that followed was unreasonable because it substantially deviated from FBI policy and it was done in bad faith. Additionally, the lower court erred in denying Mr. Fillyaw's motion to reconsider the denial of his suppression when it misapplied the law. Finally, Mr. Fillyaw argues under exceptions to forfeiture this Court should review the issue that the search of his bag is fruit of the poisonous tree because Mr. Fillyaw was only located after a dragnet search of a commercial license plate reader database which revealed his precise location in a private parking lot.

## ARGUMENT

An agent's or officer's possession of a badge and an arrest warrant does not grant license to *carte blanch* search and seize property, full stop. *Carte blanch* searches authorized by general warrants "were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). *Carte blanch* searches through "[g]eneral warrants amount[s] to the proverbial fox guarding the hen house" and the Fourth Amendment is the ultimate protection against that proverbial fox. *See* Laura K. Donahue, *The Original Fourth Amendment*, 83 U. Chi. L. Rev. 1181, 1322 (2016).

The Fourth Amendment provides in pertinent part, "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures shall not be violated, and no [w]arrants shall issue, but upon probable cause supported by [o]ath or affirmation . . ." U.S. Const. amend IV. A warrantless search is *per se* unreasonable unless it falls within one of the few carefully delineated exceptions to the warrant requirement. *United States v. Leo*, 792 F.3d 742, 748 (7th Cir. 2015); *see also Cady v. Dombrowski*, 413 U.S. 433, 451 (1973)

(Brennan, J. dissenting) ("[t]he Court begins its analysis by recognizing, as clearly it must, that the Fourth Amendment's prohibition against 'unreasonable search and seizures' is shaped by the warrant clause, and thus that a warrantless search of private property is *per se* 'unreasonable' under the Fourth Amendment unless within one of the few specifically established and well-delineated exceptions."). At issue in this case is the seizure and subsequent search of Mr. Fillyaw's backpack (private property) while he was being arrested in a private parking lot.

A search and seizure must be reasonable regardless of whether it is done pursuant to a warrant or under a limited exception to the warrant requirement. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *See Caniglia v. Strom*, 593 U.S. 194, 204 (2021) (Kavanaugh, J. concurring); *see also* Cynthia Lee, *Package Bombs, Footlockers, and Laptops: What the Disappearing Container Doctrine Can Tell Us About the Fourth Amendment*, 100 J. Crim. L. & Criminology 1403, 1413, n. 29 (2010).

At issue in this appeal is the determination that the search was a lawful inventory search, and thus reasonable. Mr. Fillyaw also disputes whether the seizure (impoundment) of his backpack was reasonable. Without any proffered justification, law enforcement seized Mr. Fillyaw's backpack because "they weren't just going to leave it." App. 46, 49; 212; 318:12–14. The Court found because Mr. Fillyaw never identified who he would give the backpack to and leaving the backpack could expose agents to liability, they were justified in taking the backpack. App. 322:14–323:21. As such, law enforcement would have inevitably

discovered the items in the backpack pursuant to an inventory search. 323:22–324:2.

First, this brief argues the impoundment of the backpack was unreasonable because it was not pursuant to a standardized policy. Next, this brief argues the inventory search was (1) unreasonable because of substantial deviations from policy and (2) it was not in good faith because it is being used to subterfuge Mr. Fillyaw's Fourth Amendment protections. Finally, this brief argues under an injustice and public interest standard that the search of Mr. Fillyaw's backpack was the fruit of an unreasonable search of a license plate reader database.[2] In addition to these points, Mr. Fillyaw argues the lower court abused its discretion in denying his motion to reconsider on the basis that "the judge g[etting] it wrong is not really a basis for a motion for reconsideration." 331:3–8.

This Court reviews *de novo* whether a search or seizure subject to a motion to suppress was ultimately reasonable, while the facts used to determine if the search was reasonable is reviewed for clear error. *See United States v. Clinton*, 591 F.3d 968, 971 (7th Cir. 2010) ("[i]n reviewing the district court's denial of a motion to suppress . . . we review question of law *de novo* and questions of fact for clear error). While this Court reviews the denial of a motion to reconsider under an abuse of discretion standard, because the denial of the motion to reconsider was a non-final order and focused on a matter of law, its review is *de novo*. *See Carnes v. HMO La.*, 114 F.4th 927, 929–30 (7th Cir. 2024).

[2] Counsel concedes this issue was not raised below. As an alternative form of relief, Mr. Fillyaw seeks a remand to the district court to properly litigate this issue.

**I. The lower court erred in finding the impoundment and inventory search were reasonable under the Fourth Amendment because there was no justification to seize Mr. Fillyaw's backpack, and the search substantially deviated from policy and was in bad faith.**

Mr. Fillyaw's Fourth Amendment right against unreasonable and warrantless seizure of private property was violated because the impoundment of the backpack was without justification and not pursuant to a standardized policy. Following the impoundment of the backpack, the inventory search was unreasonable because it substantially deviated from departmental policy and because it was not done in good faith. For each of these reasons, the motion to suppress should have been granted.

**A. <u>An impoundment is a seizure under the Fourth Amendment that must be done pursuant to a standardized policy.</u>**

At the suppression hearing, no legal justification was proffered to impound or seize Mr. Fillyaw's backpack. An impoundment is a seizure under the Fourth Amendment that must be conducted pursuant to a standardized policy or procedure. *See United States v. Duguay*, 93 F.3d 346, 351–53 (7th Cir. 1996) (discussing that impoundments must be supported by "constitutionally legitimate rationale"); *see also United States v. Cartwright*, 630 F.3d 610, 612–16 (7th Cir. 2010) (discussing and finding police agency's impoundment policy was standardized and reasonable). Here, no such policy nor rationale was provided. *See generally,* App. 215:23–253:2, 233:9–284:6. The justification that "the bag was going to come with us" and "we weren't just going to leave the bag" are insufficient justifications under the Constitution and Circuit precedent. *See id.* at 352 ("[a]n impoundment must either

be supported by probable cause, or be consistent with the police role as 'caretaker' of the streets and completely unrelated to an ongoing criminal investigation").

This Court in *Duguay*, rejected an impoundment of a vehicle based upon the lack of a standard procedure that permitted the seizure of vehicles. *See generally, Duguay*, 93 F.3d at 352–354. In *Duguay*, the police impounded a parked vehicle after arresting the owner for assault. *Id*. at 349. The proceedings in *Duguay* revealed the police department who impounded the vehicle did not have a standardized policy for impounding vehicles. *See id*. at 351–54. This Court reversed the denial of the defendant's motion to suppress, finding the police conduct violated the Fourth Amendment because the police did not "employ[] a standardized impoundment procedure. *Id*. Like in *Duguay*, the FBI did not employ a standard procedure that guided the impoundment (seizure) of Mr. Fillyaw's backpack. *See id*.

Here, there was no probable cause to seize the bag and there was no community care-taking rationale. *See id*. at 352. Although the agent's actions imply a "community care-taking rationale," it is questionable that the FBI, whose sole task is investigatory, has a community care-taking function. *See South Dakota v. Opperman*, 428 U.S. 364, 369–70, n. 4 (1976) (citing *Cady*, 413 U.S. at 440) ("[t]he contact with vehicles by federal law enforcement usually, if not always involves the detection or investigation of crimes . . .").[3] The FBI, unlike local authorities, does not have a "community care-taking" function. Consistent with this assertion, below

[3] *see also* www.fbi.gov/mission (listing its mission as "[p]rotec[ing] the American people and uphold[ing] the Constitution . . ." and its priorities are to crush violent crime and defend the homeland).

the Government nor the FBI agent witnesses proffered no standardized policy for impounding the backpack. *See, e.g.,* App. 217:8–218:18 (only discussing search and search policy); App. 231:6–323:8 (same).

Without a standardized policy for impoundment, the seizure of the impounded property is unreasonable under the Fourth Amendment. To be sure of this proposition, it is clear the weight of authority supports that a policy for impoundment is required. *See generally, Colorado v. Bertine*, 479 U.S. 367, 375 (1987) (finding that police's exercise of discretion for impoundment is permitted so long as it is exercised according to "standard criteria"); *see also United States v. Sanders*, 796 F.3d 1241, 1247–48 (10th Cir. 2015) (collecting cases and analyzing circuit law on impoundments, including *Duguay* and *Cartwright*). Because the seizure of Mr. Fillyaw's backpack was purported to be for the purpose of conducting an inventory search, it must be the case it was not a probable cause seizure. App. 275:25–276:8. Because the seizure was not pursuant to probable cause, it must have been according to a policy. *See Duguay*, 93 F.3d at 352. In the absence of such policy, Mr. Fillyaw's Fourth Amendment rights were violated and suppression is required. *See id*. at 351–54.

In *Sanders*, the police impounded a parked vehicle in a private parking lot after its owner was arrested pursuant to an arrest warrant. *See id.* at 1243. After impounding the vehicle, the police conducted an inventory search that led to the discovery of methamphetamine and ecstasy. *See id*. The Court reversed the denial of the motion to suppress, holding that an impoundment is constitutional "only if it

is guided by both standardized criteria and a legitimate community-caretaking rationale." *See id*.

While it might be argued the law of impoundment only applies to vehicles, such is not the case. *See generally, United States v. Braxton*, 61 F.4th 830 (10th Cir. 2023). In *Braxton*, the 10th Circuit reversed the denial of a motion to suppress and extended its holding in *Sanders* to items found in an "impounded" backpack after a probable cause arrest. *See id*. at 831–33. The Court in *Braxton*, applying *Sanders*, found that an impoundment must (1) be according to standardized policy and be (2) non-pretextual. *See Braxton*, 61 F.4th at 835. The Court in *Braxton* ultimately decided the case on the pretextual nature of the impoundment based upon a multi-factor test set forth in *Sanders*. *See id*. Those factors apply with equal weight here and are discussed *infra*. With respect to the lack of policy for impounding property, this should serve as the basis for a reversal *or* remand for further inquiry as to whether such a policy even existed. *See Duguay*, 93 F.3d at 351–54.

**B. <u>Under the *Sanders'* factors, the impoundment was pretextual and therefore unreasonable and violated Mr. Fillyaw's Fourth Amendment.</u>**

In *Braxton*, the Court applied the *Sanders* court's "nonexclusive list of factors relevant to determining whether 'a reasonable and legitimate, non[]pretextual community-caretaking rationale exist[ed]" to determine if the impoundment of Braxton's backpack was compliant under the Fourth Amendment. *See id*. at 835. The factors from Sanders included,

> (1) whether the vehicle was on private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment existed (especially another

> person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment.

*Id*. Notwithstanding the fact the *Sanders* factors discuss a vehicle, the *Braxton* court applied them with equal force to a backpack being carried by the defendant. *See id*. In spite of this, the court below attempted to distinguish a vehicle from a backpack without regard to an overall seizure of private property that took place on non-public land. *See* App. 219:3–220:20; 331:21–332:2.

These factors apply in Mr. Fillyaw's case, and weigh in favor of finding a pretextual impoundment and weigh against finding a community-caretaking rationale existed. *See Braxton*, 61 F.4th at 835.

Here, the seizure of Mr. Fillyaw's backpack took place on private property. The private property owner was never consulted to determine if the backpack interfered with their property. *See* App. 239:21–24. Multiple alternatives to impoundment existed. App. 111–12 at ¶ 20. The backpack was never implicated in a crime. App. 281:4–7. And finally, Mr. Fillyaw never consented to the impoundment of his backpack. App. 320:2–4.

While it is true, under a probable cause analysis, the police are not required to explore less intrusive means (*see Bertine*, 479 U.S. at 374), the same cannot be said when the property is not implicated in a crime and is solely for "caretaking." *See Duguay*, 93 F.3d at 353 ("[t]he policy of impounding [property] without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impoundment is for the 'caretaking' of the streets . . . "). At the hearing below, the seizure here was premised on a non-investigative purpose,

and as such, it was "patently unreasonable" to not permit Mr. Fillyaw to arrange for its speedy removal. *See id.*; *see also Braxton*, 61 F.4th at 835–37 (discussing whether the defendant can provide an alternative to impoundment).

Numerous alternatives to impoundment existed in Mr. Fillyaw's case. His girlfriend was present and would have retrieved the bag, as was proven up at the motion to suppress hearing, and further proven up in his motion to reconsider. *See* App. 289:3–12; 118–19. The maroon van Mr. Fillyaw was driving that morning was not suspected of any crimes and agents could have placed the bag back into Mr. Fillyaw's vehicle and locked the vehicle, as they had the keys. *See, e.g.,* App. 148 at ¶ 21 (discussing black van suspected in crime). *But see* App. 150 at ¶ 29 (morning of arrest Mr. Fillyaw driving maroon van not suspected of crimes). The agents could have brought the bag into the management office. *See* App. 230:12–15 (discussing agents went to apartment manager). Most simply, the agents could have just left the bag.

The lower court expressly rejected the alternative to impoundment argument. App. 323:17–21. Despite Mr. Fillyaw asking the "call his people," and the agents rejecting such requests, the Court found because Ms. Lynch did not make her presence known, the agents had no knowledge of who to give the bag to. App. 322:21–323:21. Further the lower court reasoned that the agents would subject themselves to liability if they just left the bag. App. 322:14–20.

Both of these points have been expressly rejected by circuit law. To the first point, as *Braxton* made clear, the inquiry under the third factor is whether *an*

*alternative to impoundment existed*, "not who suggested the alternative." *See id.* at 836 (stating it did not matter that Braxton did not expressly ask the officers to give his girlfriend his backpack). Likewise, in *Duguay*, this Court made clear that it was "patently unreasonable" to not grant the opportunity to have property removed when the property is not suspected of a crime. *See id.* at 353. To the second point, this Court in *Duguay* expressly rejected a similar liability argument, finding the police's liability only increased with the taking of the item, as "[t]he state owes no duty to protect things outside its custody from private injury." *See id.* at 353. As such, these findings by the lower court were in error.

Here, although the agents initially said they searched "incident to arrest," they altered their narrative and claimed they had no justification to search the bag other than to inventory it. As was argued *supra*, there was no proffered justification to seize the bag. Throughout the earlier stages of litigation, it was merely assumed the agents just had *carte blanch* authority to take the bag with them, which opened the door to an inventory search. *See, e.g.,* App. 212, 217:8–218:18, 231:6–232:8. This only followed agent's initial assertion that the search was incident to arrest. App. 128. Only after Counsel filed Mr. Fillyaw's motion to suppress did the narrative of the search change. *See, e.g.,* App. 208. The shape-shifting nature of the Government's proffered justification only adds to the pretextual nature of the impoundment and later search.[4]

[4] Further discussed *infra* as bad faith.

While it is true, on public property, taking the bag may be permitted under *Illinois v. Lafeyette*, 462 U.S. 640 (1983), *Lafeyette* is distinguishable on the basis the arrest happened on public property and no alternatives to impoundment existed. *See id*. Furthermore, at issue in *Lafeyette* was the search, not the seizure. *See id*. Here, because the seizure occurred on private property, the agents had no automatic right or necessity to take Mr. Fillyaw's bag with them. App. 219:8–220:20. Without any right or rationale to seize or impound the bag, it also cannot be said the items would have been inevitably discovered.

### C. The "inventory search" that followed the preceding impoundment was unreasonable because it substantially deviated from policy and was done in bad faith.

"Both the decision to take [property] into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment." *Duguay*, 93 F.3d at 351. "The touchstone of the Fourth Amendment analysis is 'reasonableness.'" *Id*. at 353. An inventory search is one of the few delineated exceptions to the warrant requirement that does not require either a warrant or probable cause. *See Bertine*, 479 U.S. at 371. Nonetheless, the inventory search must be reasonable. *See id*.

For an inventory search to be reasonable, it must be in accordance with standardized procedure and must be conducted in good faith. *See id*. at 372–76; *see also* Lee, *supra*, at 1462 ("for an inventory search to be valid, the officer (1) must have been acting in accordance with standardized criteria, and (2) must not have acted in bad faith, i.e., for the sole purpose of searching for evidence of criminal wrongdoing."). Here, the inventory search was unreasonable because it

substantially deviated from policy and because it was used to subterfuge the probable cause and warrant requirements. *See United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003) (stating police cannot "raise[] 'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence.").

**1. The inventory search substantially deviated from FBI policy on inventory searches.**

While minor non-compliance with an inventory search may be permissible, a material deviation from an inventory search policy may render the search invalid and unreasonable. *See, e.g., Cartwright*, 630 F.3d at 616 ("minor deviations from department policy do not render an inventory search unreasonable."). *But see United States v. Magdirila*, 962 F.3d 1152, 1157 (9th Cir. 2020) *abrogated by statute on other grounds as stated in United States v. Gibson*, 998 F.3d 415 (9th Cir. 2021) ("[i]nventory searches that materially deviate from departmental policy can be invalid."). The search here materially and substantially deviated from FBI policy.

The FBI's inventory search policy, attached to the Government's response to Mr. Fillyaw's motion to suppress and attached to Mr. Fillyaw's motion to reconsider, sets forth strict protocol for inventorying personal property. *See* App. 120. At the motion to suppress hearing, FBI agent Jacob Dettmering testified that the policy is merely "guidelines" and does not need to be strictly adhered to. App. 244:2–16, 249:17–25. Contrary to Dettmering's testimony, the policy itself states "[a]n inventory search *must strictly* adhere to the following standardized criteria and procedures for the collection of inventory." *See* App. 120 (emphasis added). The word

"guidelines" is not used once within the text of the Bureau's policy on inventory searches. *See id*.

Here, there were six substantial deviations from the FBI's policy. First, the policy was not strictly adhered to, as explained below. Second, the agents did not gain possession of the property lawfully (as explained *supra*). Third, a written summary of logged items must be completed and the summary here was incomplete. *See* App. 46; 274:21–275:2. Fourth, the agents are required to "memorialize facts pertinent to other activities undertaken during the inventory process" but here, no facts other than Ploch searched the bag incident to arrest were recorded. *See* App. 127–134. Fifth, the inventory search "should be conducted by two agents" when practicable but here, Ploch searched the bag incident to arrest by himself before being joined by TFO Boyd and others.[5] *See* App. 340 (BWC_000006 at 0:15–9:17). Finally, the policy states "[w]henever there is probable cause to believe an inventory search would also yield items of evidence or contraband, agents must obtain a search warrant when feasible." App. 120.

a. *Overall deviation and the failure to strictly comply with FBI protocol.*

Each of the above-mentioned procedural points were disregarded by the agents and task force officers who participated in the search of Mr. Fillyaw's

[5] As explained *infra*, Ploch took the bag, searched it incident to arrest, *then* upon discovering contraband asked for a pair of "rubbers" and a camera to take photographs of the contraband. Ploch searched the bag alone and discovered contraband. At no point during the search did Ploch have an inventory log or FBI FD-597 form. When Ploch filled out his Cudahy, Wisconsin police report contemporaneous with or shortly after the arrest, he labelled his search as a search incident to arrest.

backpack. To the first point of FBI policy, the deviations of the policy in and of themselves violate the prescription that the policy "must [be] strictly adhere[ed] to." Because of these individual and cumulative deviations, it should be found the search itself was a material deviation and not governed nor regulated by FBI policy.[6] *See United States v. Lomeli*, 76 F.3d 146, 148 (7th Cir. 1996) ("evidence will be suppressed if uncovered during an inventory search that is not regulated by police policy").

b. *Agents never obtained the backpack through lawful means.*

As was argued *supra*, the agents never lawfully impounded the backpack, nor did they articulate a reason for taking the backpack other than "he was coming with us" and "we weren't just going to leave it." *See, e.g.,* App. 44, 46, 49; 318:12–14. During the motion to suppress hearing, it was clearly established that even though an alternative to seizing the bag existed, the agents refused Mr. Fillyaw an opportunity to have it relocated. App. 227:13–17. In addition, other alternatives existed such as placing the backpack back in the maroon van or bringing it to the management office of the apartment complex. *See* App. 152 at ¶ 33 (discussing apartment manager and having Mr. Fillyaw's keys). These were effortless alternatives to seizing the bag. Regardless of the alternatives, and contrary to FBI policy, there was no constitutional justification proffered to seize or impound Mr. Fillyaw's backpack on private property. *See generally* App. 215:14–252:2, 253:8–

[6] This is not to say that FBI's policy does not exist; it is to say the policy was not followed by the agents and officers in the field. Because the policy was not followed, it could not have regulated the search that was conducted.

285:5 (never discussing standardized impoundment policy, while assuming backpack could be taken).

c. *The failure to file the proper forms in an inventory search.*

Also argued below was the fact that TFO Ploch disregarded FBI policy in filling out an FD-302 or FD-597 form, as was conceded by the Government below. *See* App. 46 (Government's brief discussing Ploch's deviation from policy). While it is true, that not filling out a complete inventory form will not render the search unreasonable, it is a material deviation of policy nonetheless, and contributes to the cumulative deviations of FBI policy. *See United States v. Garay*, 938 F.3d 1108, 1112 (9th Cir. 2019) (collecting cases and stating "[t]hat the officer did not complete the inventory list that ordinarily would be completed as part of a department inventory search is not, *on its own*, a material deviation from policy) (emphasis added).

d. *The memorialized facts do not support an inventory search.*

The FBI policy also directs that agents "memorialize facts pertinent to other activities undertaken during the inventory process . . . or a non-inventory-related search conducted and any evidence collected . . ." App. 120. To this point, Ploch's report *only* documented he searched Mr. Fillyaw's bag incident to arrest. App. 127–134. At the suppression hearing below, Ploch testified "I was trying to be efficient and start documenting the evidence *and what we had done so far while it's fresh in my head* . . ." App. 274:4–12 (emphasis added).

In response to the Government's question about why Ploch worded his report as saying "[s]earch incident to arrest, I opened the backpack and observed a

firearm, suspected marijuana, [and] suspected cocaine[,]" he answered, "I write my reports so when I have to come to court like this, I can remember my events." App. 275:13–20. When asked by the Government why Ploch used the term "[s]earch incident to arrest," Ploch replied, "[t]o me, that means Mr. Fillyaw was arrested and now, because he was arrested, I am searching this backpack." App. 275:21–24.

Ploch never wrote in his Cudahy Police Department report that he was "inventorying the bag's content" or searching the bag for any policy justification that underlies a permissible inventory search. *See Bertine*, 479 U.S. at 371–72 (discussing inventory searches and their policy justifications). While it is true Ploch testified that he searched to avoid placing dangerous items in his vehicle, this testimony was more than a year after his search incident to arrest assertion. App. 276:2–8. Ploch's testimony was also approximately seven months after his search incident to arrest assertion was challenged in Mr. Fillyaw's motion to suppress, and six months after that assertion was renounced by his commander. App. 1–35; 208. It is more convincing that Ploch was not operating under FBI policy pursuant to inventory searches because he was doing a search incident to arrest, as he documented contemporaneous with the events and while "it[] was fresh in his head." *See* App. 127–34, 274:4–12 (fresh in my head).

e. *Ploch deviated from FBI policy when he conducted the search alone.*

FBI policy on inventory searches directs that "[w]here practicable, the inventory should be conducted by two agents [or] officers." App. 120. Here, although reluctantly, Ploch conceded that the initial search of Mr. Fillyaw's bag was done

alone. App. 282:8–24. The body-worn camera of TFO Boyd shows her approaching TFO Ploch after he already opened the backpack and removed a pair of pants revealing the contraband Mr. Fillyaw was charged with. App. 340 (BWC_000006 at 0:19–9:17). Only after this search, Ploch asks Boyd and another agent for "rubbers" and a camera to document what he already found in the search. *See id.; see also* App. 338 (BWC_000003 at 4:12–5:04). Ploch then placed the pants back in the backpack so TFO Boyd could take staged photographs of how the bag looked when Ploch searched it prior to Boyd approaching him. App. 340 (BWC_000006 at 0:19–9:17) With more than a dozen agents and officers present, it would have been more than practicable to search with an additional person present.

f. *Special Agent Dettmering testified he had probable cause to get a warrant for the bag during the motion to suppress hearing.*

As a final point to the deviations from FBI policy, and arguably the most significant, is the disregarding of the warrant requirement if an agent has probable cause. App. 120. FBI policy states "[w]henever there is probable cause to believe an inventory search would also yield items of evidence or contraband, agents must obtain a warrant when feasible." *Id*. At the motion to suppress hearing below, Agent Dettmering testified on cross-examination as follows:

Mr. Stone: So at that moment, Agent Ploch had control over the backpack?

Dettmering: He had the – correct, he had the backpack.

Mr. Stone: At that point did you have probable cause to search that backpack?

Dettmering: I had probable cause to get a warrant for that backpack if I wanted to.

Mr. Stone: Did you get a warrant for the backpack?

Dettmering: No.***

Mr. Stone: Does the bureau's manual for inventory searches of personal property instruct whenever it is possible . . . agents must obtain a search warrant when feasible?***

Dettmering: I would have to look at it. I don't know verbatim what is says.***

Mr. Stone: Do you recognize No. 2 as bureau instructions?

Dettmering: Those are guidelines, correct.

Mr. Stone: And the last paragraph, could you read it aloud to the judge?

Dettmering: "Whenever there is probable cause to believe an inventory search would also yield items of evidence or contraband, agents must obtain a search warrant when feasible. Searches conducted pursuant to the warrant are presumptively valid. Obtaining a search warrant eliminates any later argument that the inventory search was conducted solely for investigative purposes and thus justified."

Mr. Stone: Now the bag was in Ploch's possession?*** He could have held onto it?

Dettmering: Could have.

Mr. Stone: He could have gotten a warrant?

Dettmering: At the time, no. We could have followed up with a search warrant, but that was going to be transported away and we're not going to not inventory search it before we take it.

Mr. Stone: You could have left it on the ground and obtained a search warrant with agents looking over it?

Dettmering: At the time we didn't know if we were going to stay or go, so the property was going with him for his arrest.

Mr. Stone: You didn't get a search warrant, that's the point?

Dettmering: I did not.

App. 240:14–245:20

The above testimony reveals Dettmering claimed to have probable cause to search the backpack but opted to not get a search warrant in violation of FBI policy.[7] App. 120. Based upon this deviation and the other deviations, cumulatively, it should be found this inventory search was unreasonable as it was not regulated by the promulgated policies of the FBI.

**2. Ploch's "inventory search" was done in bad faith, making the search unreasonable under the Fourth Amendment.**

As previously stated, an inventory search cannot be an "after-the-fact attempt to justify a simple investigatory search for incriminating evidence." *See Rowland*, 341 F.3d at 780 (cleaned up). While it is true that the subjective motivations of an officer are typically irrelevant for a search under the Fourth Amendment, such is not the case when evaluating an inventory search. *See, e.g., United States v. Reed*, 319 F. Supp. 3d 1112, 1121 (S.D. Ind. 2018) (citing *Whren v. United States*, 517 U.S. 801 (1996) and stating *Whren* recognized that subjective motivations may be taken into account for inventory searches). Here, the invocation of "inventory search" was only claimed after Mr. Fillyaw filed his motion to

[7] It must be noted that nothing in Dettmering's testimony established why he believed he had probable cause to search the backpack and neither side asked him to elaborate on his statements. It is clear that an agent's or officer's statement without more is not probable cause in and of itself.

suppress challenging and demonstrating the search could not have been a valid search incident to arrest. *Compare* App. 1–35 *and* 127–34 *with* 208.

Ploch's statement that the search was "incident to arrest" are his words to describe his actions and motivations. *See* App. 128. He wrote those words "to remember the events that . . . [he] did that day." App. 275:8–24. We should believe Ploch's statements as they were made at or near the time of the event so they would be "fresh in his head." *See id*. Ploch's statement that he searched "incident to arrest" was his present sense and a trustworthy statement because of its contemporaneity to the search. *See United States v. Parker*, 936 F.2d 950, 954 (7th Cir. 1991) (discussing the present sense impression exception to the hearsay rule and stating, "[t]he underlying rationale of the present sense impression exception is that substantial contemporaneity of the event and statement minimizes the unreliability due to defective recollection or conscious fabrication.").

Ploch's statement describing his actions only changed after a motion to suppress was filed challenging *his* search incident to arrest[8] and after his commander repudiated the idea the search was incident to arrest. App. 208.

Regardless of what Ploch's commander stated in an email months later (*see id.*), it was Ploch who conducted the search. Ploch's actions undermine that he was conducting an inventory search. The body-worn camera footage shows: he had no log to document the items he was supposedly "inventorying," he wore no gloves during his initial search (undermining any belief he would remove and inspect each item

[8] The lower court agreed the search was not a valid search incident to arrest as the rationales for a search incident to arrest were not present. *See* App. 320:5–6.

piece by piece), he did not ask for a camera to document items until *after* his initial search, and when he asked another agent (Rupnick) for gloves after his initial search, Rupnick replied "wait Jacob searched it, no?". App. 338 (BWC_000003 at 4:12–5:04). While Rupnick made a misstatement about "Jacob" already searching the bag, the statement shows the agents' intentions— they were going to search the bag no matter what.

Rupnick's body-worn camera shows the gloveless Ploch alone with the bag opened and pants removed. *See id*. The video shows Ploch showing the contraband to Rupnick. And the video shows Ploch did this without anywhere to log the items he was allegedly going to "inventory." *See id.; See also* App. 340 (BWC_000006 at 0:19–9:17). Again, Ploch only asked for pictures to be taken during his *second* search of the bag. App. 340 (BWC_000006 at 0:19–9:07). Ploch's first search of the bag was not an inventory search, as revealed by Ploch's statements in his report written the day of the search, not months or a year later. *See* App. 127–34, 135.

The evidence (i.e., statements in police reports, testimony, and live actions shown by body-worn camera) shows the search was a defective search incident to arrest. The later repudiation of that theory to shield a wrongful investigatory search from rightful suppression is *per se* bad faith. This Court should reject the notion that the search was a "good faith inventory search conducted under FBI policy."

Ploch's testimony also contained numerous inconsistencies. Ploch testified that he searched the bag to uncover items that could be used to facilitate Mr.

Fillyaw's escape or be used to harm officers— consistent with the justifications to conduct a search incident to arrest (*see, e.g., Arizona v. Gant*, 556 U.S. 332, 339–40 (2009)); but Ploch also testified that he searched that bag because he was transporting it into a facility with unarmed guards. *See* App. 264:10–25. Nowhere in Ploch's reports or in discussion on body-worn camera is the latter assertion corroborated. *See* App. 127–34 (mentioning search incident to arrest but not mentioning inventory search). Ploch testified that he intended to transport Mr. Fillyaw in Dettmering's vehicle, so he needed to search the bag before transport, but video of the vehicle's interior shows there was never any room to transport an arrestee. *Compare* App. 262:7–10 (Ploch's testimony) *with* App. 125 *and* App. 340 (BWC_000006 at 4:56) (showing the interior of Dettmering's vehicle).




Finally, and most bizarre, Ploch testified that he was with the Cudahy Police Department for "[o]ver ten years" and an FBI task force officer "[g]oing on five years." App. 253:23–254:1. Yet, Ploch's report states at the time of the arrest (376

days before the motion to suppress hearing) he was 21 years old and his date of birth was January 1, 2001. App. 132. Assuming the truth of Ploch's statements and the correctness of his report, it would mean Ploch was 22 at the motion to suppress hearing; he was about 17 years old at the time he became a task force officer; and he was about 12 years old at the time he began employment with Cudahy Police Department. *Compare* App. 253:23–254:1 (stating the length of time he was with Cudahy Police and assigned to an FBI task force) *with* App. 132 (showing Ploch's age as 21 and his date is birth on January 1, 2001).

## II. The lower court erred in denying Mr. Fillyaw's motion to reconsider where it was shown to the court that it misapplied the law.

Mr. Fillyaw sought reconsideration of the denial of his motion to suppress by pointing out to the lower court that its ruling was in error based upon erroneous application of law. "A motion to reconsider is focused on errors of law . . ." *Cruz-Moyaho v. Holder*, 703 F.3d 991, 996 (7th Cir. 2012).

Mr. Fillyaw's motion pointed out to the judge that its finding that agents would be exposed to liability if they did not take his bag was manifestly erroneous. *Compare* App. 322:14–20 *with Duguay*, 93 F.3d at 352–53 (discussing that state actors have no duty to protect personal property from private injury). Further, Mr. Fillyaw pointed out to the lower court that no standardized policy for impounding the property was presented, despite being required under Circuit precedent. *See Sanders*, 796 F.3d at 1247–48 (surveying supreme court and circuit case law on policies required for impoundment); *see also Duguay*, 93 F.3d at 351–52 (discussing

that a standard criteria must exist for impounding property). Based upon these two points, it is clear the lower court misapplied the law.

In denying the motion to reconsider, the court stated that "the judge got it wrong is not really a basis for a motion to reconsider." App. 331:3–8. Here, because the judge got it wrong based upon erroneous application of the law, a motion to reconsider was the proper vehicle to point out the lower court's errors. As such, the lower court erred in denying Mr. Fillyaw's motion to reconsider.

**III. Under the injustice and public interest exceptions for forfeiture, this Court should consider whether the search of Mr. Fillyaw's backpack flows from an unlawful dragnet search of a "license plate reader" database.**

Mr. Fillyaw concedes the general rule exists that an issue may not be raised for the first time on appeal. However, Mr. Fillyaw also recognizes this Court may offer flexibility where justice demands it. *See City of Chi. v. Matchmaker Real Estate Sales, Inc.*, 982 F.2d 1086, 1101 (7th Cir. 1992). In Mr. Fillyaw's case, he was found at the location where he was arrested *only* because of a dragnet search of a "commercial license plate reader" database. App. 149 at ¶¶'s 24–25. Here, FBI agents from approximately 40 miles away in Milwaukee, Wisconsin, searched a commercial license plate reader database for Mr. Fillyaw's black conversion van. *See id*. The search revealed Mr. Fillyaw's black van *parked* in Gurnee, Illinois. *Id.*

Counsel did not raise this issue below because Counsel relied upon the assertion in this case that the central issue was a search incident to arrest, as indicated in Ploch's police report. *See* App. 127–34, 135. After the denial of Mr. Fillyaw's motion, he raised these facts in his motion to reconsider and requested the

proofs be reopened, but the Court denied that requested relief. *See generally,* App. 103–26, 331:13–20. Because the judge immediately set the case for trial and made clear there would be no continuances to the trial, Counsel did not have the opportunity to file a second motion to suppress. App. 332:25–335:4

While license plate readers may be permissible to the extent that Mr. Fillyaw has no expectation of privacy in his license plate number, he has an expectation of privacy in the whole of his movements. *See Carpenter v. United States*, 585 U.S. 296, 310 (2018). A warrantless search of a license plate reader database that reveals the whole of someone's movements is more akin to the technology and dragnet search in *Carpenter* and *United States v. Jones*, 565 U.S. 400 (2012) as opposed to the tracking of a person in a single trip, like in *United States v. Knotts*, 460 U.S. 276 (1983).

Because of the ubiquity of automated license plate readers, their widespread surveillance and data gathering, and the commercial database systems storing data on tracked vehicles, this issue is in the public's interest and in the interest of justice. Recent media reports within the State of Illinois reveal the prevalence, power, and potential for abuse of this technology. *See, e.g,* Liz Nagey, *License Plate Reader Company Under Investigation in Illinois Speaks Out as Suburb Ends Contracts*, ABC 7 Chicago (Aug. 28, 2025); Andrew Adams, *Hundreds of Police Departments Use Camera Company Accused of Breaking State Law*, Capitol News Illinois (August 27, 2025); Carrie Shepherd, *U.S. Customs and Border Protection*

*Accesses Illinois License Plate Data*, Axios News (August 26, 2025).[9] Here, FBI agents and officers from another state with just a few keystrokes were able to locate Mr. Fillyaw's van precisely to where it was parked in a parking lot. *See* App. 149 at ¶¶'s 24–25. Where Mr. Fillyaw's van was parked is the parking lot where he was arrested and where his bag was searched. *See id.*

With respect to this issue, Mr. Fillyaw requests this Court vacate both the order denying suppression and his plea, and order additional proceedings to further develop the record. Alternatively, if this Court is willing to exercise its discretion in favor of reviewing this issue, Mr. Fillyaw requests this Court to permit additional briefing on whether the issue of the license plate reader database was an unconstitutional search giving rise to the search of Mr. Fillyaw's backpack. Afterall, there is no evidence in the record below that agents would have found Mr. Fillyaw without the initial search of the database.

## CONCLUSION

For these reasons, this Court should reverse the judgment below denying suppression. Alternatively, this Court should vacate the order denying suppression and remand for further proceedings to determine if the impoundment complied with standardized policy. As a final alternative, this Court should order remand for further proceedings to determine if the warrantless search of the commercial license

[9] https://abc7chicago.com/post/evanston-oak-park-end-contracts-flock-safety-license-plate-reader-company-investigation-illinois/17678137/; https://capitolnewsillinois.com/news/hundreds-of-police-departments-use-camera-company-accused-of-breaking-state-law/; https://www.axios.com/local/chicago/2025/08/26/illinois-flock-safety-cbp-license-plate-data-violations.

plate reader system violated Mr. Fillyaw's Fourth Amendment rights under *Carpenter* and *Jones*.

/s/ Jed Stone
Jed Stone
Counsel for Appellant
Stone & Associates, Ltd.
325 Washington St., Suite 400
847-336-7888
jstone@jedstone.com
ARDC No. 2745127

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies this brief complies with requirements of Federal Rule of Appellate Procedure 32(a), including the type-volume limit of Fed. R. App. P. 32 (a)(7)(B) and Seventh Circuit Rule 32(c), excluding the parts of the document exempted by Fed. R. App. P. 32(f), in that this brief contains 10,113 words.

This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6), as it was prepared using 12-point Century Schoolbook Font.

/s/ Jed Stone___________
Jed Stone

# REQUIRED SHORT APPENDIX

# REQUIRED SHORT APPENDIX

## Index

**Title** **Page**

Docket Entry Denying Mr. Fillyaw's Motion to Suppress (ECF No. 41)
November 8, 2024…… SA. 2

Docket Entry Denying Mr. Fillyaw's Motion to Reconsider (ECF No. 43)
December 16, 2024…… SA. 3

Docket Entry of Change and Entry of Plea Preserving Right to Appeal (ECF No. 50)
February 14, 2025…… SA. 4

Docket Entry of Sentencing Hearing and Sentence (ECF No. 59)
May 9, 2025…… SA. 5

Final Judgment in a Criminal Case (pp. 1–2) (ECF No. 67)
May 12, 2025…… SA. 6–7

Excerpt of Judge's Ruling Denying Mr. Fillyaw's Motion to Suppress
Mot. Suppress Hr'g., 107:23–112:4, Nov. 8, 2024…… SA. 8–13

Notice of Appeal (ECF No. 62)
May 14, 2025…… SA. 14.

Certificate of Compliance with Circuit Rule 30(a)…… SA. 15

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.1)**
**Eastern Division**

UNITED STATES OF AMERICA

Plaintiff,

v.

Case No.: 1:23−cr−00650
Honorable Matthew F. Kennelly

William Fillyaw

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, November 8, 2024:

MINUTE entry before the Honorable Matthew F. Kennelly as to William Fillyaw: In person evidentiary hearing held on 11/8/2024. Oral argument heard on the defendant's motion to suppress [16]. Oral ruling made on the defendant's motion to suppress [16] is denied for the reasons stated on the record. Jury trial is set for 2/18/2025 at 9:15 a.m. The case is set for a telephonic status hearing on 12/16/2024 at 8:45 a.m. The following call−in number will be used for the hearing: 650−479−3207; access code 2305−915−8729. The Court will make the necessary arrangements to have the defendant appear for the hearing. Ordered time excluded in the interest of justice through 12/16/2024 due to the need for further trial preparation, pursuant to 18 U.S.C. 3161(h)(7)(B)(iv). Mailed notice. (mma, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.1)**
**Eastern Division**

UNITED STATES OF AMERICA
Plaintiff,
v.
William Fillyaw
Defendant.

Case No.: 1:23−cr−00650
Honorable Matthew F. Kennelly

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, December 16, 2024:

MINUTE entry before the Honorable Matthew F. Kennelly as to William Fillyaw: Telephonic status hearing held on 12/16/2024. The MCC did not make the defendant available for the hearing. Defense counsel's motion for reconsideration [42] is denied for the reasons stated on the record. The pretrial conference is set for 1/28/2025 at 11:00 a.m. The conference will be held in Courtroom 2103. The Court will make the necessary arrangements to have the defendant appear for the conference. Motions in limine are to be filed by 1/10/2025, and responses are to be filed by 1/17/2025. The government is directed to submit a proposed statement of the case, proposed voir dire questions, a list of witnesses, and a set of proposed jury instructions by 1/10/2025; defendant is to submit the same materials by 1/17/2025 but need not duplicate any of the government's submissions. The case is set for a telephonic status hearing on 1/6/2025 at 8:45 a.m. The following call−in number will be used for the hearing: 650−479−3207; access code 2305−915−8729. The Court will make the necessary arrangements to have the defendant appear for the hearing. Ordered time excluded in the interest of justice through 1/28/2025 due to the need for preparation, filing, and ruling on motions, pursuant to 18 U.S.C. 3161(h)(1)(D). Mailed notice. (mma, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.2)**
**Eastern Division**

UNITED STATES OF AMERICA
Plaintiff,
v.
William Fillyaw
Defendant.

Case No.: 1:23−cr−00650
Honorable Matthew F. Kennelly

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, February 14, 2025:

MINUTE entry before the Honorable Matthew F. Kennelly as to William Fillyaw: Change of plea hearing held 2/14/2025. Defendant withdraws his plea and enters a plea of guilty to counts one and two of the indictment. The Court accepts the defendant';s plea and finds the defendant guilty to counts one and two of the indictment. Enter Plea Agreement. Case is referred to the Probation Office for preparation of a presentence report. Jury trial set for 3/3/2025 and the pretrial conference set for 2/27/2025 are vacated. Sentencing hearing is set for 5/9/2025 at 1:00 p.m. The hearing will be held in Courtroom 2103. Government's version of the offense is to be submitted by 2/28/2025. Defendant's version of the offense, if any, is to be submitted by 3/7/2025. Presentence report is to be filed by 4/4/2025. The Probation Office is directed to disclose its recommendation to both sides. The defendant's sentencing memorandum is to be filed by 4/28/2025; government's sentencing memorandum is to be filed by 5/2/2025. Pursuant to 18 U.S.C. § 3664(d)(1), if restitution is being sought in this case, 60 days prior to the sentencing date, the Government shall provide the Probation Office and the courtroom deputy an electronic standardized spreadsheet (available on the Court's website) with a list of victims and their full current contact information. This list shall include any amounts subject to restitution. If the Government is not able to provide the full victim list 60 days prior to sentencing, they shall file a motion to request an extension of time to compile the information, to the extent permitted by 18 U.S.C. § 3664(d)(5). Mailed notice. (mma, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF NextGen 1.8 (rev. 1.8.3)**
**Eastern Division**

UNITED STATES OF AMERICA

Plaintiff,

v.

Case No.: 1:23−cr−00650
Honorable Matthew F. Kennelly

William Fillyaw

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, May 9, 2025:

MINUTE entry before the Honorable Matthew F. Kennelly as to William Fillyaw: In person sentencing hearing held on 5/9/2025. The government's motion for forfeiture [57] is granted. Preliminary Order of Forfeiture to follow. Defendant's motion to proceed in forma pauperis on appeal [58] is granted. The motion for appointment counsel on appeal is denied without prejudice to making a motion with the Court of Appeals. Counsel needs to be appointed to represent Mr. Fillyaw on appeal. Judgment order to follow. Mailed notice. (mma, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT

Northern District of Illinois

UNITED STATES OF AMERICA
**v.**
WILLIAM FILLYAW

**JUDGMENT IN A CRIMINAL CASE**

Case Number: 1:23-CR-00650(1)

USM Number: 29132-510

Jed H. Stone
Defendant's Attorney

**THE DEFENDANT:**

☒ pleaded guilty to count(s) one (1) and two (2) of the indictment.

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☐ was found guilty on count(s) after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B) Possession with Intent to Distribute Fentanyl and Cocaine | 10/28/2022 | 1 |
| 18 U.S.C. § 924(c)(1)(A), 18 U.S.C. § 924(c)(1)(A)(i) Possession of a Firearm in Furtherance of a Drug Trafficking Crime | 10/28/2022 | 2 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count three (3) is dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

May 9, 2025
Date of Imposition of Judgment

[signature]
Signature of Judge

Matthew F. Kennelly, United States District Judge
Name and Title of Judge

5-12-2025
Date

DEFENDANT: WILLIAM FILLYAW
CASE NUMBER: 1:23-CR-00650(1)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Eighty-four (84) months as to count one (1) and sixty (60) months as to count 2 of the indictment. The counts are to run consecutively to each other. The sentence is to also run concurrently with the sentence imposed in defendant's Eastern District of Wisconsin case, 22-CR-223-PP.

☒ The court makes the following recommendations to the Bureau of Prisons: Any costs of imprisonment are waived due to the defendant's inability to pay. The Court recommends that the defendant be designated to an institution as close to Chicago as possible due to the defendant's significant other residing in the area.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at on

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2:00 pm on

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: ______________________________________________

______________________________________________

______________________________________________

Defendant delivered on __________ to ______________________ at __________________________, with a certified copy of this judgment.

______________________________
UNITED STATES MARSHAL

By ______________________________
DEPUTY UNITED STATES MARSHAL

So on three prongs there, there is no viable person to give this backpack to. And the speedy and efficient removal piece of this exactly -- is exactly what happened.

Second, to the extent your Honor is crediting this, which it sounds like you are not, but we should note that the arguments the government makes here, the DIOG inventory policy, that was produced in discovery in February of 2024 which is well in advance of this briefing. So the accusation that this was concocted in response to the motion which was filed well after February is just not the truth here.

And then finally, to clarify TFO Ploch's testimony, his testimony was that he wasn't opening this to investigate the backpack because he thought there would be drugs or guns or evidence of the arson. He didn't think there would be evidence of a crime. His testimony was that he was looking in there for safety purposes and that he was looking for safety reasons for things like weapons, drugs, explosives, or other potentially harmful items.

Just to clarify that for the record, TFO Ploch did distinguish those two and I think he used the term guns and drugs for both, but the purpose behind those was different.

Nothing further, your Honor.

THE COURT: All right. I don't need briefing on this. The issues are pretty straightforward. I'm going to make an oral ruling on it.

This is a challenge to the search of Mr. Fillyaw's backpack as being violative of the Fourth Amendment. It's undisputed that there wasn't consent and that there wasn't a warrant.

There's a good chance that under *Arizona v. Gant* that this was not a valid search incident to arrest. But the government doesn't -- although they discuss that in their brief, the government primarily justifies the search or attempts to justify the search of the backpack on a different basis; namely, that it was a valid inventory search and, alternatively, inevitable discovery. So I don't think I really need to address the search incident to arrest issue as a justification for the search.

The government did apparently in a filing in Milwaukee or in the Eastern District of Wisconsin at least initially talk about the search that way in a separate case. And it was also referred to in TFO -- Task Force Officer Ploch's report and I guess the report by officer or Agent Shamsi, but I don't really see any law to support the proposition that the government is thereby tethered to that description or that it renders a later argument in court, you know, to lack credibility or lack viability.

So the argument here is that it was a valid inventory search, and I think it was. It was reasonable for the arresting officers to impound the backpack and do an inventory

on it.

Mr. Fillyaw was being arrested pursuant to a warrant on a pending criminal charge, and he was to be taken, the plan was to take him to court to appear on that charge, and it was reasonable to impound the backpack for that reason because it was property that was in his possession.

It was impounded in my view. Whether that happened when it was taken off his back or whether it happened when it was taken away by TFO Ploch, I don't think that's really all that significant. It was reasonable to impound it for the reasons I just described.

So under *Illinois v. Lafayette*, it's proper for the police to remove or enlist or inventory property that's found in the possession of an arrested person who is to be jailed. That's a Supreme Court case from 1993. And under *U.S. v. Cartwright*, an inventory search is lawful if the person's been lawfully arrested, which Mr. Fillyaw was, and if the search is conducted as part of a routine procedure that's incident to incarcerating an arrested person in accordance with established procedures, and I think that requirement was also met here.

There was what I would guess consider a minor deviation from the FBI manual on this having to do with whether it was two officers as opposed to one officer, but that's an immaterial, minor deviation. I don't think there's

a basis to grant a motion to suppress based on non-compliance with that element of the FBI's policy.

And the particulars of the FBI's policy in any event, at least this particular part, two officers versus one really aren't mandated at all by the Fourth Amendment.

The fact that Task Force Officer Ploch may have been particularly attentive when he looked in the backpack, the firearms and drugs likewise is not significant in the way that's argued here. It was legitimate to search the item that was going to be transported with Mr. Fillyaw to see if there was anything potentially dangerous in it. And the fact that he focused on a firearm and other contraband isn't particularly surprising or all that significant.

I don't think it would be reasonable to expect the officers to have just left the property there. That would subject them to liability for lost property. There was a lot of money in there. And even if there wasn't a gun and wasn't, you know, any other contraband, just leaving the property there on the spot would have subjected them to liability, the officers to liability for losing the money.

As far as Ms. Lynch was concerned, you know, it's not clear to me exactly when Ms. Lynch arrived and when she left. I will say that if Ms. Lynch was standing where she says she was, she was in the vicinity of the two police vehicles that looked like they were pulled up on the curb or on the lawn,

and there's no evidence, including her own testimony, that she made herself known or anything like that, and there's no indication from watching the video and watching what the officers were doing that they noticed anybody standing over there at all, assuming there was anybody there to begin with.

And one way or another, Ms. Lynch didn't identify herself or make her presence known. There's no basis in the evidence to say that the agents should have somehow identified her or given the backpack to her.

I'd also point out that in the back and forth between the arresting agents and Mr. Fillyaw, there was discussion about contacting his girlfriend, and he kept asking that he could call her. And I would point out that even though -- if what Ms. Lynch said is right, she was literally standing 25 feet away and at no point does Mr. Fillyaw say, well, she's right over there or anything like that.

And there was no indication by him that he suggested anybody to leave the backpack with. And I don't think that there's any kind of affirmative duty under the law for the arresting officers to ask, well, would you like us to leave with this somebody and, if so, who is that?

So bottom line, I think this was a valid inventory search. Even if there's some technical defect in an inventory search, there's no question an inventory search would have been done once Mr. Fillyaw was taken to the police station or

the U.S. Marshals Service and there's no basis to leave the backpack there.

So for all of those reasons, the motion to suppress is denied.

We need to reset the trial date in this case. So why don't you grab your calendars. Let's talk about that.

How about the day after President's Day which would be the 18th of February?

MR. STONE: February 18?

THE COURT: Correct. The 17th is President's Day.

MS. MORAN: Your Honor, I'll be on family leave at that time. I can find someone to fill in for me.

THE COURT: When do you go on family leave, from and to?

MS. MORAN: February 17th.

THE COURT: To?

MS. MORAN: Until approximately midsummer.

THE COURT: I'm not going to continue the case until midsummer. I can't try it before that because there's too many other things.

MS. MORAN: We'll find someone to replace me.

THE COURT: Okay. Mr. Stone, how does February the 18th look?

MR. STONE: February?

THE COURT: 18th.

IN THE UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>WILLIAM FILLYAW,<br><br>*Defendant.* | Case No. 23-CR-650<br><br>Hon. Matthew Kennelly<br><br>Notice of Appeal |

**NOTICE OF APPEAL TO THE SEVENTH CIRCUIT**

Notice is hereby given that Mr. William S. Fillyaw, Defendant, appeals to the United States Court of Appeals for the Seventh Circuit, the District Court's order denying his Motion to Suppress on November 8, 2024 (Dkt. 41), and the District Court's order denying his Motion to Reconsider the denial of his Motion to Suppress on December 16, 2025 (Dkt. 43), in addition to any issues at sentencing. A final judgment of sentence was entered against Mr. Fillyaw on May 9, 2025.

Respectfully Submitted,

/s/ Jed stone
Attorney for William Fillyaw

**STONE & ASSOCIATES, LTD.**
**325 WASHINGTON ST., SUITE 400**
**WAUKEGAN, ILLINOIS 60085**
**847-336-7888**
**jstone@jedstone.com**
**ARDC No. 2745127**

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

In accordance with Circuit Rule 30(d), I certify that this appendix contains all of the materials required by Circuit Rule 30(a) and that the separately submitted appendix contains all of the materials required by Circuit Rule 30(b).

/s/ Jed Stone___________
Jed Stone

IN THE UNITED STATES COURT OF APPEALS
SEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>WILLIAM S. FILLYAW,<br>*Defendant-Appellant*. | Appeal No. 25–1836<br><br>Dist. Case No. 23CR650<br>Honorable Judge Matthew F. Kennelly<br>Judge Presiding |

**CERTIFICATE OF SERVICE**

PLEASE TAKE NOTICE that on October 7, 2025, the undersigned attorney filed this brief with the Clerk of the United States Court of Appeals for the Seventh Circuit through the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and they will be served via the CM/ECF system.

/s/ Jed Stone____________________
Jed Stone
Attorney for Defendant-Appellant