Appeal No. 25-1836

# IN THE SEVENTH CIRCUIT COURT OF APPEALS

**UNITED STATES OF AMERICA,**
*PLAINTIFF–APPELLEE*,

V.

**WILLIAM S. FILLYAW,**
*DEFENDANT–APPELLANT*.

# APPELLANT'S REPLY BRIEF

ON APPEAL FROM THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION,
JUDGE MATHEW F. KENNELLY,
*JUDGE PRESIDING*
DISTRICT CASE NO. 23CR650

JED STONE,
COUNSEL FOR APPELLANT
STONE & ASSOCIATES, LTD.
325 WASHINGTON ST., SUITE 400
WAUKEGAN, IL 60085
847-336-7888
JSTONE@JEDSTONE.COM
ARDC NO. 2745127

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………………i

Argument…………………………………………………………………………………1

I. This Court Should Reject Any Claim The Backpack was Lawfully Impounded and Inventory Searched………………………………………3

II. Like In *Duguay*, The FBI's Justification For Impounding The Backpack Was Based On An Investigative Rationale Without Probable Cause Which Is Unreasonable Under the Fourth Amendment………………………………………………………………5

III. This Court Should Find The Impoundment Was Not Pursuant to Any Standardized FBI Policy For Impoundment Because No Standardized Policy Was Offered By The Government Or Its Agents, And Testimony Shows The Agents Had No Standardized Procedure To Impound Personal Property……………………………………………………7

IV. The Impoundment Was Unreasonable Because Reasonable Alternatives To Impoundment Existed……………………………………9

V. This Court Should Find The Inventory Search Was Done In Bad Faith, And Therefore Unreasonable…………………………………………10

VI. The Search Of The License Plate Reader Database Was a Search Under The Fourth Amendment……………………………………………12

Conclusion……………………………………………………………………………13

Certificate of Compliance……………………………………………………………14

## TABLE OF AUTHORITIES

### Cases

*Arizona v. Gant*, 556 U.S. 332 (2009)……………………………………………3

*Carpenter v. United States*, 585 U.S. 296 (2018)……………………………………12

*Colorado v. Bertine*, 479 U.S. 376……………………………………………………10

*United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996)……………………………*passim*

*United States v. Marshall*, 986 F.2d 1171 (8th Cir. 1993)....................................5

*United States v. Rowland,* 341 F.3d 774 (8th Cir. 2003)....................................5

*United States v. Salazar*, 69 F.4th 474 (7th Cir. 2023)......................................3

## ARGUMENT

To recapitulate, Mr. Fillyaw was suspected of being an accessory after the fact to an arson of a motor vehicle. App. 40. An arrest warrant was issued for Mr. Fillyaw out of the Eastern District of Wisconsin on October 26, 2022. App. 128. It was alleged Mr. Fillyaw drove a black Chevy conversion van bearing Wisconsin license plate ANB9487 when the offense was committed. App. 148–49. Law enforcement located the van in a parking lot by searching its license plate in an "ALPR database." App. 149.

Using the location from the database search, agents and officers surveilled an apartment complex parking lot for Mr. Fillyaw. *Id*. Agents noted the black van was parked in the lot. *Id*. Just prior to arrest, Mr. Fillyaw was observed driving a *different* maroon van bearing Illinois license plate DN21922 into the parking lot where he was arrested. App. 150. The maroon van was unsuspected of a crime.

Mr. Fillyaw was taken into custody by agents as he walked away from the maroon van toward the apartments. App. 128. The arrest was without incident. *Id*. Mr. Fillyaw got on the ground and spread his arms in the shape of a "T" as he was instructed to do. *See* App. 21. Mr. Fillyaw's backpack was removed and set down a distance away behind a wall of agents. App. 22–23, 29. A task force officer named Brian Ploch retrieved Mr. Fillyaw's backpack. App. 128. As Ploch carried the backpack away, he immediately searched it. App. 261. Ploch and others labelled this as a search "incident to arrest." App. 128, 135.

The Government buries this lead.

Only after Mr. Fillyaw's motion to suppress this search "incident to arrest" was filed did the Government assert the search of Mr. Fillyaw's backpack was an "inventory search" following a lawful impoundment. App. 36–54.[1] Not a single report mentions the terms "inventory search" or "impoundment" but multiple reports document the search as being "incident to arrest." App. 128, 135.

The district court agreed this was not a search incident to arrest but found the backpack was lawfully impounded. App. 320. The district court found that agents had no other options but to seize the backpack. App. 322–30. The district court also found agents would have exposed themselves to liability *if they did not take the bag*. App. 322. The district court's conclusions were in error.

At this juncture, the Government concedes the seizure of the backpack was an impoundment pursuant to the community-caretaking doctrine. *See* Gov's Br., pp. 19–29, Jan. 1, 2026.

Absent from the motion to suppress hearing was any evidence of a "standardized" policy for impoundment. To date, no official impoundment policy has been produced. For this reason alone, the impoundment should be found unreasonable. Additionally, where alternatives to impoundment existed, the agents were not justified in seizing the bag. Finally, the inventory search was unreasonable for the reasons already expressed in Mr. Fillyaw's opening brief. *See*

[1] While the Government contended in the court below that the FBI policy for inventory searches was tendered in discovery, prior to Mr. Fillyaw's motion to suppress being filed, not a single document actually asserted the search was an inventory search. Every report drafted by the searching agents and officers describes the search as being "incident to arrest." *See* App. 128, 135.

Def.'s Br., 21–33, Oct. 3, 2025. For each reason contained herein, and in Mr. Fillyaw's brief, this Honorable Court must reverse the order below denying the motion to suppress, or alternatively, remand for further proceedings on whether the FBI operated under a standardized policy for impounding property.

Additionally, notwithstanding waiver or forfeiture, this Court should consider remanding for additional fact-finding to determine if the search for Mr. Fillyaw's location on a license plate reader database constituted a warrantless search under the Fourth Amendment, and whether the search of his bag flows from the initial unreasonable search of the database.

## I. This Court Should Reject Any Claim The Backpack was Lawfully Impounded and Inventory Searched.

Law enforcement initially claimed, the backpack was searched incident to arrest without the justifications for such a search. Under the Fourth Amendment, an officer "may search the area from within which [the arrestee] might gain possession of a weapon or destructible evidence" contemporaneous with an arrest. *United States v. Salazar*, 69 F.4th 474, 477 (7th Cir. 2023) (cleaned up). Relying upon *Arizona v. Gant*, 556 U.S. at 339, this Court clearly stated, "if an arrestee cannot possibly reach the area an officer wants to search, neither justification for this exception is present, and it does not apply." *Salazar*, 69 F.4th at 477.

Relying upon *Salazar* and *Gant*, Mr. Fillyaw moved to suppress the search of his backpack. *See generally,* App. 1–35. Task Force Officer Ploch and Special Agent Shamsi each documented the search of Mr. Fillyaw's backpack was "incident to arrest." App. 128, 135. Special Agent Dettmering concurred with the defense in an

email to the Government, stating the search here, as incident to arrest, would have violated Mr. Fillyaw's Fourth Amendment right against unreasonable searches. App. 208. As the video evidence suggests and Dettmering's testimony establishes, Mr. Fillyaw was calm and compliant, and could not have reached the searched area. App. 25–29, 234. Only after this was expounded upon in Mr. Fillyaw's motion did the Government assert the search of the bag was an inventory search. App. 36–54.

At the motion to suppress hearing, Task Force Officer Ploch admitted he documented the search as being incident to arrest. App. 275–76, 280. Ploch testified he knew his reports had to be reliable, accurate, and trustworthy. App. 280. Ploch admitted in cross-examination that he never used the words "inventory search" or "impoundment" and that the only description he gave of the search was "incident to arrest." App. 283. During the Government's re-direct examination of Ploch, he attempted to explain that his use of the word was not as a "lawyer" but as a "cop" who wrote the term for him to remember the events he did that day in the event he ended up in court. App. 284–85.

The notion that an experienced task force officer does not know the distinction between the types of permissible searches under the Fourth Amendment is absurd. In Ploch's circumstances, he testified he was an officer for 10 years; a task force officer for 5 years; and he testified he has participated in more than 50 arrests with the FBI. App. 253–54. It would be outlandish to think Ploch has not had basic training on the types of constitutional searches.

Further, the implication that Ploch did not know the "legal" difference between a search incident to arrest and an inventory search is incongruous with his commanding officer's communication to the Government that he fully understood the difference between the types of searches and agreed that a search incident to arrest would have violated Mr. Fillyaw's rights in this particular case. *See* App. 208. Ploch's credibility is further undermined where he testified that he wrote "search incident to arrest" to "remember the events" in case he ended up in court (App. 275, 284), but then changed positions *when* he ended up in court. *See* App. 275, 284. Ploch's attempt "raise the inventory-search banner in an after-the-fact attempt to justify what was . . . in fact purely and simply a search for incriminating evidence" must be rejected by this Court. *See United States v. Rowland,* 341 F.3d 774, 780 (8th Cir. 2003) (citing *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993)).

The blatant attempt to justify a bad search incident to arrest by recasting it as an impoundment and inventory search reflects bad faith and compels the reversal of the lower court's denial of Mr. Fillyaw's motion to suppress.

## II. Like In *Duguay*, The FBI's Justification For Impounding The Backpack Was Based On An Investigative Rationale Without Probable Cause Which Is Unreasonable Under the Fourth Amendment.

Even if this Court finds the search was not "incident to arrest" as law enforcement initially contended, it should still reverse the lower court's denial because the impoundment was unreasonable. At this juncture the Government concedes the seizure of the backpack was an impoundment for "community care-

taking) (Gov.'s Br., 19–29), but Agent Dettmering testified Mr. Fillyaw's backpack would be searched regardless of the impoundment for similar reasons rejected by this Court in *Duguay*. *Compare* App. 228-29 (Dettmering testifying that the backpack would have been searched even if an alternative to impoundment existed to document dangerous or valuable items) *with United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996) ("[w]hile protection of the arrestee's property and municipal liability are both valid reasons to conduct an inventory search after a legal impoundment, they do not establish the *a priori* legitimacy of the seizure").

As this Court stated in *Duguay*, the valid purposes of an inventory search after a "legal impoundment" do not legitimize an impoundment preceding the inventory search. *Duguay*, 93 F.3d at 352. According to Agent Dettmering's testimony, law enforcement was justified in searching Mr. Fillyaw's backpack even if they were not impounding it, and the impoundment was justified to document "dangerous" or "valuable" items. App. 228–29. While Dettmering's testimony offers legitimate reasons to conduct an inventory search, those reasons cannot justify the preceding impoundment. *Duguay*, 93 F.3d at 352.

Agent Dettmering testified (1) the backpack gets seized and transported as a part of normal policy (App. 246–48); (2) the backpack was seized because Mr. Fillyaw provided FBI no information on who to give the backpack to (*id.*); (3) the backpack would have been searched (inventoried) *even if* it was not seized (App. 228–29); and (4) the backpack was searched immediately after Mr. Fillyaw's arrest, but prior to Mr. Fillyaw asking if he could contact "his people." App. 239–40.

Dettmering further testified he refused to let Mr. Fillyaw contact a third party for "evidentiary reasons." App. 227. None of these supposed justifications for the impoundment and subsequent search of the backpack are reasonable under the Fourth Amendment.

Both Dettmering and Ploch testified the search of the backpack was not in furtherance of an investigation, yet their conduct and testimony reveal that no circumstance existed where the bag would not be searched. *See, e.g.,* App. 228–29. Taking their word that the search was not investigative, there was no ostensible reason to not permit Mr. Fillyaw to make quick arrangements for the removal of the bag. *See Duguay*, 93 F.3d at 353. Here, Mr. Fillyaw was denied any opportunity to make alternative arrangements for his property prior to the search. App. 239–40 (Dettmering stating the bag was immediately searched), 246–48 (Dettmering admitting he refused to let Mr. Fillyaw contact anyone to retrieve his property).

## III. This Court Should Find The Impoundment Was Not Pursuant to Any Standardized FBI Policy For Impoundment Because No Standardized Policy Was Offered By The Government Or Its Agents, And Testimony Shows The Agents Had No Standardized Procedure To Impound Personal Property.

Under this Court's precedent, an impoundment must be done according to standardized policy. *See Duguay*, 93 F.3d at 351. In *Duguay* this Court reversed the denial of a motion to suppress finding that the impoundment of the defendant's vehicle was not pursuant to a standardized policy based upon the testimony of two separate detectives. *Id*. at 352. While one detective testified impoundment of a vehicle is proper where the person or owner in control of the vehicle is arrested,

another detective testified that if any person in a vehicle is arrested, impoundment is proper. *See id*. Similarly, in Mr. Fillyaw's case, the testimony established that impoundment was not sufficiently standardized. *Compare* App. 246–47 (Dettmering stating it's normal to just take the backpack) *with* App. 254–55 (Ploch stating it's a "case-by-case basis").

In this case, Agent Dettmering testified that according to "policy" (1) agents do not permit arrestees to make phone calls, primarily for "evidentiary" purposes (despite the Government's concession the impoundment was for community-caretaking purposes) (App. 227); (2) items are *always* searched, even if they are not impounded (App. 228–29); (3) it is normal to seize belongings for transport, notwithstanding whether the property could be moved or given to a third party (*see* App. 246–48); and (4) because Mr. Fillyaw never identified who the property could be given to, FBI took the bag instead of leaving it, though Dettmering refused to let Mr. Fillyaw call anyone who could take his property. *See id*. TFO Ploch testified that when a person is arrested pursuant to a warrant, their "person" gets searched to make sure they are unarmed, and "it's a case-by-case basis, but [the FBI] would typically search their person and their property." App. 254–55.

The testimony of Agent Dettmering and TFO Ploch establish inconsistent criteria. "A reasonable impoundment requires standardized criteria or [an] established routine." *Duguay*, 93 F.3d at 352. According to Dettmering's testimony, property is always searched, regardless of the constitutional justification. App. 228–29. While the Government concedes the seizure was for "community-caretaking,"

Dettmering testified the property needed to be seized because no one who could take the property was identified while simultaneously asserting he refused to let Mr. Fillyaw contact anyone to retrieve his property for "evidentiary reasons."[2] App. 227, 246–48. Dettmering's circular reasoning cannot circumvent the Fourth Amendment, and the court below erred in accepting this justification.

The justification that Mr. Fillyaw could not make calls for "evidentiary reasons" flies in the face of any community-caretaking justification to seize the backpack. *See* App. 227. Moreover, Ploch's testimony that "it's a case-by-case basis but items are typically searched" (App. 254–55) fails to reasonably identify a *standardized* criteria or procedure for impoundment. *See Duguay*, 93 F.3d at 351–52. The claim that items are "typically searched," and would have been searched even if not impounded, demonstrates these agents had no constitutional justification to search, under Fourth Amendment and highlights the pretextual nature of the agents' conduct. App. 227–29, 254–55. To permit the FBI's justification for seizure in this case would put the Fourth Amendment on life-support.

## IV. The Impoundment Was Unreasonable Because Reasonable Alternatives To Impoundment Existed.

The agents cannot launder a bad search into a clean search by saying no reasonable alternatives to impoundment existed when their actions disregarded *numerous* alternatives to impoundment.

[2] The notion that the impoundment was for community-caretaking, but Mr. Fillyaw was not afforded any opportunity to call his girlfriend to retrieve his property for "evidentiary reasons" (*see* App. 227, 246–48) disparages this Court's precedent. *Duguay*, 93 F.3d at 353.

First, it was established by the testimony of Ms. Sabrina Lynch that she was present and would have taken the backpack, but Mr. Fillyaw was not allowed to contact her. App. 246–48, 280. Next, although the FBI was investigating a crime that occurred in the black van bearing Wisconsin license plate ANB9487, Mr Fillyaw arrived in a different maroon van bearing license plate DN21922 the morning he was arrested, and that maroon van was unsuspected of any criminal offense. *See* App. 148–50. At the time agents arrested Mr. Fillyaw, he was carrying the keys to the maroon van—they could have placed the backpack in the maroon van and simply locked it. *See* App. 337 (BWC_000001) (showing the keys were taken from Mr. Fillyaw's pocket after he was handcuffed). Next, the agents could have brought the backpack to the management office of the apartment building. *See* App. 230 (testimony that law enforcement was in contact with the building manager). Finally, the agents could have just left the backpack—they were not bound to take the backpack from a private parking lot, even if the lot was accessible to the public. *See Duguay*, 93 F.3d at 352–53 (discussing that law enforcement owes no duty to protect a detainee's property until they take possession of it).

## V. This Court Should Find The Inventory Search Was Done In Bad Faith, And Therefore Unreasonable.

Inventory searches must be conducted in good faith, pursuant to standardized policies, and based upon legitimate rationales. *See Colorado v. Bertine*, 479 U.S. 367, 372–73 (1987). The search in this case was an unreasonable search, only later claimed to be an inventory search. *Compare* App. 127, 135 (documenting the search as being "incident to arrest") *with* App. 208 (later claims

that a search incident to arrest would violate Mr. Fillyaw's rights and the search here was an inventory search). This attempt to launder a faulty search incident to arrest, rather than conceding mistake, is *per se* bad faith.

The purported inventory search in this case only followed an unreasonable seizure, now claimed to be an impoundment pursuant to community-caretaking. Gov.'s Br., pp. 19–29. As previously stated, the agents cannot launder a bad search incident to arrest, by later claiming the bag was seized for transport, and therefore, needed to be inventoried. Here, the seizure was unjustified for the reasons stated above. Further, the inventory search, required to be according to policy, substantially deviated from FBI policy on inventory searches. *Compare* Def.'s Br., pp. 21–33 *with* App. 120.

In this case, the agents were required to lawfully obtain the property—they didn't. *See* App. 120. Ploch was supposed to conduct the search with a second agent (where practicable)—he didn't. App. 265, 282. Ploch was supposed to fill out a FD-302 or FD-597—he didn't. App. 46, 274–75. Dettmering should have obtained a search warrant for the bag if he had probable cause—he didn't. *See* App. 242, 244. These cumulative deviations from FBI policy reflect a substantial deviation from FBI's inventory search policy. *See* App. 120.

Finally, at the hearing on the motion to suppress, Dettmering testified he had probable cause to obtain a warrant for the bag. *See* App. 242. No testimony established what his probable cause was based upon, but the facts in this case make

clear there was no probable cause to get a warrant to search and seize the bag at the time it was seized and searched.[3]

## VI. The Search Of The License Plate Reader Database Was a Search Under The Fourth Amendment.

While it is true this issue was not raised in the court below, that should not preclude review in this Court. Mr. Fillyaw's location was only discovered after law enforcement from 40 miles away[4] in another state searched Mr. Fillyaw's license plate into a license plate reader database. App. 149. This search revealed Mr. Fillyaw's precise location in the private parking lot to an apartment complex where he was arrested. *Id*. This type of warrantless search of Mr. Fillyaw's location is indeed a search of his location where he had a reasonable expectation of privacy that society would recognize as reasonable. *Carpenter v. United States*, 585 U.S. 296, 304 (2018). This search revealed the same intimacies of life recognized by the Supreme Court in *Carpenter*. *See id*. at 305–13. As alternative relief, Mr. Fillyaw requests this Court to remand on this issue for further factual development.

---

[3] Mr. Fillyaw was arrested on October 28, 2022, for the arson purportedly committed on October 3, 2022. It is not clear what "probable cause" Agent Dettmering claimed to have to get a warrant for Mr. Fillyaw's backpack 25 days after the incident occurred, where no allegation existed that the backpack was connected to the arson.

[4] Mr. Fillyaw respectfully requests this Court take judicial notice of the distance between Milwaukee, Wisconsin and Gurnee, Illinois.

## CONCLUSION

Based upon all of the foregoing reasons and for all reasons contained within Mr. Fillyaw's opening brief, this Honorable Court should reverse the judgment of below and order suppression of evidence flowing from the unlawful and unreasonable impoundment and search of Mr. Fillyaw's backpack.

Respectfully Submitted,

/s/ Jed Stone________________________

Jed Stone,
Counsel for Appellant William Fillyaw
Stone & Associates, Ltd.
325 Washington St., Suite 400
Waukegan, IL 60085
847-336-7888
jstone@jedstone.com
ARDC No. 2745127

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies this reply brief complies with requirements of Federal Rule of Appellate Procedure 32(a), including the type-volume limit of Fed. R. App. P. 32 (a)(7)(B) and Seventh Circuit Rule 32(c), excluding the parts of the document exempted by Fed. R. App. P. 32(f), in that this brief contains 13 pages.

This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as it was prepared using 12-point Century Schoolbook Font.

/s/ Jed Stone___________
Jed Stone

IN THE UNITED STATES COURT OF APPEALS
SEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>WILLIAM S. FILLYAW,<br>*Defendant-Appellant*. | Appeal No. 25–1836<br><br>Dist. Case No. 23CR650<br>Honorable Judge Matthew F. Kennelly<br>Judge Presiding |

**CERTIFICATE OF SERVICE**

PLEASE TAKE NOTICE that on April 6, 2026, the undersigned attorney filed this reply brief with the Clerk of the United States Court of Appeals for the Seventh Circuit through the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and they will be served via the CM/ECF system.

/s/ Jed Stone____________________
Jed Stone
Attorney for Defendant-Appellant